IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: ASBESTOS PRODUCTS LIABILITY LITIGATION (No. VI) | : : : : | Consolidated Under MDL DOCKET NO. 875 |
| DAVID AND FRANCES GRAVER | : : : | |
| v. | : : : | Civil Action No. 11-02636 |
| VARIOUS DEFENDANTS | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                                MAY 16, 2011

      Before the Court is Plaintiff's Motion to Remand (doc. no. 3) and removing Defendant, Allentown Cement Company's, Response (doc. no. 11.)

**I.   BACKGROUND**

      Plaintiff David B. Graver was diagnosed with mesothelioma on May 24, 2010.  (Pl.'s Reply, doc. no. 17, at 1.) Plaintiffs, David B. Graver and his wife, Frances Graver, filed a complaint against various Defendants alleging injury due to asbestos exposure in the Philadelphia Court of Common Pleas on June 25, 2010.  (Id. at 1.)  Plaintiffs were scheduled to commence trial in the Court of Common Pleas of Philadelphia

1

County on April 18, 2011, as part of a trial group with other similarly-situated plaintiffs. However, Defendant Allentown Cement Company ("Defendant") filed a Notice of Removal in the instant case on the same day. (See doc. no. 1.)

Defendant's Notice of Removal avers that there is complete diversity between the parties; Plaintiffs are citizens of Pennsylvania and no remaining Defendant is subject to personal jurisdiction in Pennsylvania. (Def.'s Removal, doc. no. 1, at 3.) Defendant argues that the case became diverse, and therefore removable, on April 11, 2011,[1] when Philadelphia Court of Common Pleas Judge Sandra Mazer Moss granted summary judgment in favor of Crown Cork & Seal, the last remaining Pennsylvania Defendant in the case. (Pl.'s Mot. to Remand, doc. no. 3, at 3.).[2] Alternatively, Defendant argues that the Pennsylvania Defendants were fraudulently joined. Defendant avers that it filed a timely notice of removal pursuant to 28 U.S.C. § 1446(b), as it was filed within thirty days "from which it may first be ascertained

---

[1] It is not clear why Defendant waited a week after the purported grounds for removability were present to remove the case. The Court accepts on the record that the delay was caused by the necessity to gain the consent of all other defendants to remove and prepare the appropriate notice, and not a strategic decision to wait until the day of trial to potentially deprive plaintiffs of their scheduled trial date. See 28 U.S.C. § 1927.

[2] It is undisputed that CertainTeed Corporation was a Pennsylvania Defendant in the instant case, and that CertainTeed Corporation's Motion for Summary Judgment was granted on an earlier date. (Pl.'s Mot. to Remand, doc. no. 3. at 3); (Def.'s Resp., doc. no. 11, at 5.)

that the case is one which is or has become removable" and was filed within a year of the commencement of the action.[3]

Plaintiffs respond that the case did not become removable on April 11, 2011, because only a voluntary dismissal of a non-diverse defendant causes a case to become removable. Plaintiffs note that they opposed Defendant Crown Cork & Seal's motion for summary judgment and "resisted any attempt" to dismiss it from the case. (Id.) Plaintiffs request immediate remand,[4] costs and fees in the amount of $100,000 and sanctions, as

---

[3] The relevant text of the statute reads:

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action. 28 U.S.C. 1446(b).

[4] Initially, Plaintiffs' Motion to Remand was styled as an emergency motion. The Court ordered a response from Defendant and scheduled a telephone conference within two (2) days of the case being removed. (See doc. no. 6.) However, following the trial judge's denial of Plaintiffs' motion for continuance, Plaintiffs' trial group proceeded without them and reached a verdict. (Pl.'s Reply, doc. no. 17, at 2, n.3.) Plaintiffs' Reply Brief indicates that a prompt remand may place Plaintiffs in a June or July trial group and has therefore requested an expeditious determination of the issue. (Id.)

Ironically, if Plaintiffs' interest in a remand is motivated by the desire for an early trial date, they may commence trial in this court in thirty (30) days. See MDL 875 Procedures, www.paed.uscourts.gov/mdl875p.asp.

Plaintiffs allege that there was no legitimate basis for Defendant Allentown Cement Company's removal. (Id. at 2.) Plaintiffs deny that Defendant Crown Cork & Seal was fraudulently joined.

**II. ANALYSIS**

    A.    <u>The Voluntary Rule</u>

           1.    <u>A Majority of Courts Apply the Voluntary/Involuntary Distinction</u>

Plaintiff's Motion to Remand avers that the instant case is not removable pursuant to the "voluntary/involuntary" rule (hereinafter the "voluntary rule"), which holds that an action which is nonremovable when commenced can become removable only by voluntary act of plaintiff.

Indeed, "the great weight of authority holds that [a case only becomes removable] where the non-diverse defendant is dropped as the result of some voluntary action by plaintiff." American Dredging Co. v. Atlantic Sea Con. Ltd., 637 F.Supp. 179, 181 (D.N.J. 1986) (emphasis added). The purpose of the voluntary rule is two-fold:

> First, it contribute[s] to judicial economy, because after an involuntary removal, the plaintiff may appeal the dismissal in state court, and success on appeal would lead to the reinstatement of the non-diverse party, destroying federal jurisdiction and compelling remand to the state court. Second, it recognizes the general principle of deference to the plaintiff's choice of forum. Allowing

> removal only when the plaintiff voluntarily dismisses a defendant ensures that the plaintiff will not be inappropriately forced out of state court without his consent.

Greco v. Beccia, 2001 WL 121887 at *2 (M.D. Pa. Feb. 13, 2001)(quoting Pender v. Bell Asbestos Mines, Ltd., 46 F. Supp. 2d 937, 940-41 (E.D. Mo. 1999)).

The Third Circuit Court of Appeals has not squarely addressed the issue,[5] but the "trend among the district courts in the Third Circuit, as illustrated by Greco, has been to require dismissal of a non-diverse defendant by voluntary act of the plaintiff as the basis for removal." Rubino v. Genuardi's Inc., 2011 WL 344081 at *6 (E.D. Pa. Jan. 31, 2011)(Baylson, J.). Indeed, all district courts in the Third Circuit to consider the issue have upheld the voluntary rule. See Greco, supra; Rubino, supra; American Dredging Co, supra; Cook v. Pep Boys-Mannie, Moe & Jack, Inc., 641 F.Supp. 43 (E.D. Pa 1985); Abels v. State Farm Fire & Cas. Co., 694 F. Supp. 140, 145 (W.D. Pa 1988). Most recently, in Rubino, the district court sua sponte inquired as to whether the involuntary dismissal of a non-diverse defendant

---

[5] Plaintiffs aver that, "[t]he only reason that the Third Circuit has not ruled on [the] voluntary[] rule is that every District Court within the Third Circuit, when faced with this issue, has remanded the case." (Pl.'s Reply, doc. no. 17, at 4.) As decisions to remand are not reviewable on appeal, see 28 U.S.C. § 1447(d), this may indeed explain the absence of Third Circuit Court of Appeals guidance on the instant issue.

5

vested the court with subject matter jurisdiction.  Rubino, 2011 WL 344081 at *5.  The court found that the voluntary rule precluded a finding of subject matter jurisdiction, and remanded the case.  Id.

Additionally, all Circuit Court of Appeals addressing the issue have adopted the voluntary rule.  See Poulos v. Naas Foods, Inc., 959 F.2d 69, 72 (7th Cir. 1992); Quinn v. Aetna Life & Casualty Co., 616 F.2d 38, 40 n.2 (2d Cir. 1980); In re: Iowa Mfg. Co. of Cedar Rapids, 747 F.2d 462 (8th Cir. 1984); Self v. General Motors Corp., 588 F.2d 655 (9th Cir. 1978); DeBry v. Transamerica Corp., 601 F.2d 480 (10th Cir. 1979); Insinga v. LaBella, 845 F.2d 249, 252 (11th Cir. 1988); see also 14B Wright & Miller § 3723 ("Federal Courts generally hold that when a plaintiff voluntarily drops from the state court action a party whose presence would defeat diversity, the case becomes removable even though diversity of citizenship did not exist when the state court action was commenced . . . .").

Defendant responds that, based on a plain reading of the statute, the voluntary rule did not survive the 1949 amendment to 28 U.S.C. § 1446(b), which, for the first time, allowed removal of a case not initially removable.  See supra, fn. 3 for relevant text.  Defendant asserts that because the statute states that a case can become removable upon "order or other paper," the statute intends for a court order to trigger

removability, regardless if it is consented to by plaintiff.

Defendants point to <u>Lyon v. Illinois Central Railroad Company</u>, 228 F.Supp. 810 (S.D. Miss. 1964), in which the court held that the voluntary rule did not survive the 1949 amendment. The court held that, based on the plain language of the statute, Congress intended that a court order dismissing a non-diverse defendant would make the case removable. <u>Id.</u> at 811. On its face, this "plain reading" argument is appealing, as it does seem that the statute applies to all orders, not just those that are executed with plaintiff's consent. Nevertheless, the Fifth Circuit Court of Appeals held that the <u>Lyon</u> court's "plain reading" of the statute was incorrect, as it "fails to take account of legislative history . . . [and] fails to read the amendment in light of previously developed case law." <u>Weems v. Louis Dreyfus Corp.</u>, 380 F.2d 545, 548 (5th Cir. 1967). The legislative history reveals that the amendment was meant to codify, not overturn, the well-established voluntary rule:

> The second paragraph of the amendment to subsection (b) is intended to make clear that the right of removal may be exercised at a later stage of the case if the initial pleading does not state a removable case but its removability is subsequently disclosed. This is declaratory of the existing rule laid down by the decisions. (See, for example, Powers v. Chesapeake, etc., Ry. Co., 169 U.S. 92 [1897]).

Id. (citing H.R. Rep. No. 81-352 pt. 83 at 1268 (1949), 1949 U.S.C.C.A.N. 1254)). The Fifth Circuit Court of Appeals

7

concluded that Congress's intent was clearly to uphold it with the 1949 amendment.[6]

Defendant also cites dicta from the Third Circuit Court of Appeals to the effect that a defendant should be able to "secure a dismissal" of the non-diverse defendants and then remove. Abels v. State Farm Fire & Cas. Co., 770 F.2d 26, 33 (3d Cir. 1985). However, the Abels language cited regarded defendant's invocation of the fraudulent joinder rule with respect to Doe defendants, and the Third Circuit Court of Appeals was merely stating that if it became apparent later in the litigation that the Doe defendants were fraudulently joined, Defendant would have a right to remove. Id. at 33. Plaintiffs do not dispute that fraudulent joinder is one exception to the voluntary rule, but of course dispute its applicability to the instant case.

Therefore, the overwhelming weight of authority holds

---

[6] The Third Circuit has repeatedly endorsed the primacy of the "plain meaning" rule in determining Congressional intent. See In Re Philadelphia Newspapers LLC, 418 B.R. 548, 558 (2009)(Robreno, J.), aff'd, In Re Philadelphia Newspapers LLC, 599 F.3d 298 (3d Cir. 2010). However, the rule yields to other considerations when, for example, a plain meaning interpretation would lead to a result "demonstrably at odds with the intentions of the drafters." United States v. Ron Pair Enters., Inc., 489 U.S. 235, 242 (1989).

As the Fifth Circuit recognized, this appears to be the case here, as the Congressional intent evinced by the legislative history was to preserve the voluntary rule. Weems, 380 F.2d at 548.

that the voluntary rule survived the 1949 amendment to the removal statute, and was indeed solidified by it, and this precludes a finding of subject matter jurisdiction when the non-diverse defendant is involuntarily dismissed from the case by order of the court.

> 2. <u>Application of the Voluntary/Involuntary Distinction in the Instant Case, and in MDL 875 Generally</u>

Concerns of judicial efficiency and economy, as well as deference to plaintiff's choice of forum, are the policies which animate the voluntary rule. With over 12,000 cases currently pending in MDL 875, concerns of efficiency and economy are particularly acute for this court.

The judicial economy served by the voluntary rule is illustrated by the facts of the instant case. In the instant case, Plaintiffs' clock for appeal of the state court's grant of summary judgment has not yet run. If the court were to deny Plaintiffs' Motion to Remand, the case would proceed in this court, with the inherent potential that the resources used on the case would be wasted, if it is later determined on appeal that the dismissal of Defendant Crown Cork & Seal was in error, and the court is divested of diversity jurisdiction. Multiply the potential for waste of judicial resources in the instant case by the thousands of cases pending, and one can quickly see the

benefits of voluntary rule, in that it ensures the finality of diversity jurisdiction.

On the other hand, the Court is acutely aware of the potential for mischief that may occur when plaintiff exerts un-checked control over which defendants it will proceed to trial against in a given case. Particularly in the asbestos context, where literally dozens of defendants may be named in the original complaint, there are multiple opportunities for naming defendants whose joinder may defeat diversity. The Fifth Circuit Court of Appeals addressed similar concerns in Crockett v. R.J. Reynolds Tobacco Co., F.3d 529 (5th Cir. 2006). In Crockett, plaintiff had improperly joined product liability defendants with non-diverse medical malpractice defendants. Id. at 531. The state court, under the Texas provision that mirrors Rule 20(a),[7] severed the product liability and medical malpractice claims into two separate cases, after which the product liability defendants removed the case to federal court on the basis of diversity jurisdiction. Id. at 533. The Fifth Circuit Court of Appeals held that "removal on the basis on an unappealed severance, by a state court, of claims against improperly joined defendants is

---

[7] Rule 20(a)(2) states that Defendants may be joined in an action if: "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."

10

not subject to the [voluntary rule]." Id. Under these circumstances, the application of the "improperly joined defendant" exception to the voluntary rule adopted by Crockett mitigates the potential for diversity-denying mischief by the plaintiff.

Therefore, based on the great weight of authority preserving the voluntary rule, and in consideration of the policies underlying the rule, Plaintiffs' Motion to Remand in the instant case will be granted.

B. Fraudulent Joinder

Defendant additionally argues that Plaintiffs' joinder of the non-diverse Defendants in the instant case, Crown Cork & Seal and CertainTeed, was fraudulent. Defendant asserts that "the entry of Summary Judgment against CertainTeed and Crown demonstrates that both of these non-diverse parties were fraudulently joined." (doc. no. 11, at 9.) Both defendants were dismissed because Plaintiff failed to meet the well-settled frequency, regularity, and proximity showing required by Pennsylvania law. (Id.) Defendant's argument that because Crown Cork and CertainTeed were entitled to summary judgment means that they were fraudulently joined lacks merit.

It is well-established that plaintiff's claim must merely be "colorable" to overcome an accusation of fraudulent

joinder, meaning that the claim asserted is not "wholly insubstantial and frivolous" will suffice to defeat jurisdiction. Batoff v. State Farm Ins. Co., 977 F.2d 848, 852 (3d Cir. 1992). This Court has previously held that "it is possible that a party is not fraudulently joined, but that the claim against that party [will] ultimately [be] dismissed for failure to state a claim upon which relief may be granted." Id.; see In Re Asbestos Prods. Liab. Litig., 673 F.Supp. 2d 358, 369 (Robreno, J.) (granting Plaintiff's motion to remand because there was "some factual and legal basis" to Plaintiff's claims, notwithstanding Defendant's potential "innocent seller" defense under Mississippi law). In the instant case, non-diverse defendants were dismissed upon a showing that they were entitled to summary judgment as a matter of law, but this does not rise to the level of unsubstantiated or frivolous claims.

**III. CONCLUSION**

In light of the nearly unanimous acceptance of the voluntary rule, and the inapplicability of improper or fraudulent joinder to the instant case, Plaintiffs' Motion to Remand will be granted.

However, Plaintiffs' request for costs and sanctions will be denied. While the authority supporting Defendant's removal is thin, neither the Third Circuit Court of Appeals, nor

this court, has ever ruled on this specific issue, and it is inaccurate to say that Defendant lacked any legitimate basis for removal, or that it was "patently unmeritorious or frivolous" under Federal Rule of Civil Procedure 11. <u>Doering v. Union County Bd. of Chosen Freeholds</u>, 857 F.2d 191, 194 (3d Cir. 1988).

For the reasons set forth above, the case will be remanded. An appropriate order follows.